# CARTER COUNTY v. STREET.—252 S. W. (2d) 803.

Eastern Section.   July 16, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

Edens & Hampton, of Elizabethton, for plaintiff in error.

Roy C. Nelson and Banks, Street & Banks, all of Elizabethton, for defendant in error.

McAMIS, J.  This suit involves the liability of Carter County (1) for failure to construct underpasses for

cattle according to the report of a jury of view in a former proceeding and (2) for additional land taken, it is claimed, by the sliding of fills and cuts beyond the limits of the condemned right of way. The case comes to this court on the appeal of Carter County from a judgment based upon a jury verdict for $1,200.

To understand the County's insistence that the plaintiff is concluded as to both items of damages by the judgment rendered in the condemnation proceeding and by his deed of September 30, 1950, conveying a right of way to the County, it is necessary to review the proceedings in the condemnation suit in some detail.

On May 12, 1950, Carter County filed a petition in the Circuit Court seeking to condemn a right of way for highway purposes through plaintiff's farm ranging in width from 100 feet to 210 feet. A jury of view was appointed and, after going upon the land, filed its report on June 12, 1950, fixing damages as follows:

Land taken 16.37 acres ..................... 1637.00
16820 feet of fencing ....................... 1682.00
Fruit trees and young timber ............... 500.00
Incidental damages to remainder ........... 2717.00

Total ...................................... 6536.00

The report then continues:

"At the time the appraisal of the above property was made we prepared a report as to the damages to the said property, and it was our intention to provide in the said report that in addition to the damages stated in the said report that the property owner should receive the merchantable timber on the said right of way, and that *two underpasses should be constructed under the said highway for passage of cattle and other livestock,* the places to be agreed

upon by the County and/or State and the property owner * * * and in event such underpasses are not constructed the property owner shall be further compensated to the extent of the cost of building same." (Italics ours.)

In September, 1950, an agreed order, approved by the Circuit Judge, was entered reciting the filing of the report of the jury of view fixing damages at $6,536 and that "both plaintiff and the defendants have reached an agreement whereby the defendant will accept the sum of $6,536.00, the amount fixed by the jury of view *independent of the underpasses* and upon the receipt of same, will execute, acknowledge and deliver to the State of Tennessee a right of way deed * * *." (Italics ours.)

On September 30, 1950, plaintiff executed and delivered a deed conveying a right of way to the full width sought in the petition for condemnation, and acknowledging the receipt of $6,536 "in full payment of said above described right of way and for all incidental damages which may be done to the remainder of land by the construction of a highway upon said right of way, *subject to the provisions of a court order entered in this case* in the office of the Clerk of the Circuit Court of Carter County, Tennessee." (Italics ours.)

The controversy here presented as to the underpasses grows out of the conflicting constructions placed by the disputants upon the italicized portions of the agreed order and the right of way deed. The County insists that the language is not sufficient to reserve the question of its duty to build underpasses or,. in the alternative, pay the land owner the cost of construction and that the court erroneously submitted that question to the jury. Plaintiff, on the other hand, insists that the settlement

was conditioned upon the construction of the underpasses or the payment of the cost of construction or, at least, that the agreed order and deed are ambiguous to an extent justifying the action of the court in submitting to the jury the question of construction.

Judge Lurton in an able opinion in Barker v. Freeland, 91 Tenn. 112, 116, 18 S. W. 60, 61 said:

"It is an indisputable proposition that when a contract is in writing, and its meaning is plain and unambiguous, its interpretation is matter of law for the court; but when the writing is not plain and unambiguous, but is such as requires the aid of evidence, either to identify the subject-matter, or in order to ascertain the situation and surrounding circumstances, or the nature and quality of the subject-matter, and the evidence be conflicting, or such as admits of more than one conclusion, it is not error to submit the interpretation of the doubtful parts of the instrument, under proper instructions, to the jury."

In Hibernia Bank & Trust Co. v. Boyd, 164 Tenn. 376, 48 S. W. (2d) 1084, 1087, the court reviewed the question and, after quoting from Judge Lurton as above, quoted with apparent approval the somewhat broader rule that it is sufficient to justify submission to the jury if the meaning of a written instrument is obscure "and its construction depends upon other and extrinsic facts in connection with what is written".

We think the construction of the agreed judgment and the deed depends upon a proper evaluation of extrinsic circumstances in the light of the language chosen by the parties. The plaintiff, at the time the judgment was entered, had an award in his favor requiring the County either to install the underpasses or pay the cost of construction. While the County could not be com-

pelled to build the underpasses, the inference is clear that, if it did not build them, the incidental damages due to cutting plaintiff's farm into two parts would be augmented to the extent of the cost of construction and, in effect, that the finality of this portion of the award was to be reserved until the County elected whether to build the underpasses or pay the cost of construction.

The question is, Did plaintiff, to obtain a termination of the litigation by payment of the money award, intend by the agreed order and deed to relieve the County of this obligation? Nothing contained in the deed is suggestive of such intention. The language is not such as is generally used by attorneys in compromise agreements and if it had been the intention to eliminate the underpasses from the award that could have been effectuated by a simple statement to that effect. Instead, the agreed judgment makes specific reference to the underpasses and provides that the judgment is to be "independent of the underpasses". The deed later executed provides that the conveyance was being made in consideration of $6536 but "subject to the provisions" of the judgment. One provision of the judgment was that the amount paid was "independent of the underpasses". It seems to us the County is asking the court to read this language out of the agreement or hold that "independent of the underpasses" has the same meaning as if the parties had said, "and relieve the County of the duty of building underpasses or paying the cost of constructing them." We must assume that the parties put this provision in the order for some purpose and, in our opinion, it would be a strained and unnatural construction to hold that the intention of the parties was to lessen the liability of the County by eliminating the underpasses.

■■ The general rule is that the burden of establishing an estoppel by judgment is upon him who invokes it and in cases where the record in the former proceeding leaves it uncertain and a matter of conjecture whether a particular matter was determined the party relying on estoppel must support his plea by proof aliunde. Fowlkes v. State, 82 Tenn. 14; Borches & Co. v. Arbuckle Bros., 111 Tenn. 498, 78 S. W. 266. This burden is carried by introducing the record of the former proceeding only if it shows prima facie and with reasonable certainty that all the elements necessary to make it res adjudicata concur. Moore v. Chattanooga Elec. R. Co., 119 Tenn. 710, 109 S. W. 497, 16 L. R. A., N. S., 978.

■ The County introduced no proof aliunde and we think, to say the least, the record left the intention of the parties and the effect of the agreed order and the deed uncertain and conjectural. The County, therefore, failed to carry the burden of proof on its plea of res adjudicata and, if the court erred in submitting the construction and interpretation of the record and deed to the jury, it was harmless error of which the County cannot complain on appeal.

■ We also concur in the trial court's action in submitting to the jury the question of the County's liability for an additional taking.

The record shows that on a former trial of this case plaintiff had agreed that he could use his land on both sides of the highway with only one underpass and that it would cost a minimum of $600 to build the cheapest type of underpass. It is a fair inference from the record that the jury allowed $600 for a single underpass and $600 for slides in the cuts and on the fills. There is material evidence, undisputed in the record, that the slides on fills were of such magnitude that it would be

practically impossible to clear the land and that on cuts young timber together with top soil has slipped into the right of way. There is ample evidence to support an award for $600 for the resulting damage.[1]

In Central Realty Co. v. City of Chattanooga, 169 Tenn. 525, 89 S. W. (2d) 346, 348, it was said:

"When a municipal corporation, in constructing a street or other public work above the grade of the surrounding land, allows the earth to slope or bulge out, so that it covers the adjacent property, the owner of such property is entitled to compensation, on the ground that his property has in effect been taken."
Cf. Hollers v. Campbell County, 192 Tenn. 442, 241 S. W. (2d) 523.

Recovery was denied in that case because the act of the municipality in allowing dirt to spread out beyond the limits of the right of way constituted a taking for which the landowner failed to sue within the limitation period of one year as required by Code Section 3132. It was also pointed out that the plaintiff must have anticipated an encroachment on his remaining land from the width of the right of way and the known height of the fill.

Recovery was denied in a similar case in Fuller v. City of Chattanooga, 22 Tenn. App. 110, 118 S. W. (2d) 886, on the ground that the landowners helped promote the improvements of the street on which their property abutted and conveyed a right of way only 45 feet in width with full knowledge that a fill 45 feet high was to be made and that, necessarily, there would be some additional land covered by the base of the fill.

---

[1]The slides on cuts have been treated by counsel for both parties as being on a parity with encroachments of stone and earth resulting from slides on the fills and, since the damages resulting from slides on the cuts are relatively small, we shall do likewise.

This case is relied upon here, but we think it is distinguishable on the ground that there is no showing that plaintiff knew at the time the agreed judgment was entered that the cuts and fills were such that slides would likely occur in the future. The road traverses rough terrain, passing over ridges and valleys. There is no showing that slides had resulted at the date of the order although the road was practically completed. It seems to us too great a burden to force a landowner to obtain expert advice as to possible slides before entering into a compromise agreement with a governmental agency from which he has every reason to expect fair treatment based upon competent advice as to what will be needed to complete the improvement. Whether slides will occur may depend upon such variables as the nature and composition of the soil and weather conditions before the fill has settled. The slides in this instance covered up to an acre and a half of plaintiff's adjoining land, their magnitude suggesting that they were not anticipated by either party.

In Fuller v. City of Chattanooga, supra, the authorities are reviewed and the rule announced that, in condemnation proceedings, the parties are not concluded for losses which neither party had reason to anticipate and the possibility of which, if suggested, would have been rejected as speculative and conjectural.

"(C)ompensation to an abutting owner for condemning the right of way to lower the grade of a street does not cover the injury caused by the sliding of the earth from his property into the excavation, where such injury was not anticipated, and where the municipality, in the condemnation proceedings, did not acquire the right to remove the

lateral support but acquired merely the right to lower the grade." 18 Am. Jur. p. 1011.

In Milhous v. State Highway Department, 194 S. C. 33, S. E. (2d) 852, 128 A. L. R. 1186, the Supreme Court of South Carolina held that an award for the value of the land taken for highway purposes together with any "special damages" did not include and bar a subsequent claim for damages resulting from an obstruction of the natural flow of surface water, the opinion emphasizing the fact that the landowner was not served with a copy of the plan of construction.

■ As we have seen, the burden of proof rests upon the party relying upon a plea of res adjudicata. The burden rested upon the County to show that the encroachments for which this suit was instituted were reasonably to be anticipated or that the possibilty of slides under conditions prevailing at the date of the award could not have been rejected as speculative and conjectural. It offered no proof in support of its plea except the judgment and right of way deed.

We think the award in this case is just. This is not a case involving an encroachment of a few feet on farm lands as to which the de minimis rule could be applied. The damage is substantial and the public rather than an individual should bear the loss. The damage is not embraced within the above quoted language of the deed as insisted by able counsel for the County.

■ Other questions made by the assignments of error are either controlled in principle by what has been said or, as pointed out by counsel for plaintiff, cannot be considered because not contained in the motion for a new trial.

Affirmed with costs.

Hale and Howard, JJ., concur.